UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

| | |
|---|---|
| LEESTMA MANAGEMENT, LLC, | Case No. 8:26-bk-02696-CED |
| ADELAIDE POINTE QOZB, LLC, | Case No. 8:26-bk-02698-CED |
| ADELAIDE POINTE BOATERS | Case No. 8:26-bk-02699-CED |
| SERVICES, LLC | |
| ADELAIDE POINTE BUILDING 1, LLC | Case No. 8:26-bk-02700-CED |
| WATERLAND BATTLE CREEK, LLC | Case No. 8:26-bk-02701-CED |
|     Debtors. | Chapter 11 |
| | (Jointly Administered) |

_____/

LEESTMA MANAGEMENT, LLC,
ADELAIDE POINTE QOZB LLC,
ADELAIDE POINTE BOATERS SERVICES, LLC
WATERLAND BATTLE CREEK, LLC
RYAN M. LEESMTA DOMESTIC ASSET
PROTECTION TRUST and               Adv. Pro. No. _____
RYAN M. LEESTMA, individually,

    Plaintiffs,

v.

INDEPENDENT BANK CORPORATION,

    Defendant.

_____/

**VERIFIED ADVERSARY COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiffs, Adelaide Pointe QOZB, LLC ("AP QOZB"), Leestma Management, LLC ("LMF") the Ryan M. Leestma Domestic Asset Protection Trust and Ryan Leestma (collectively, the "Plaintiffs"), in their respective capacities as debtors and debtors-in-possession in the above-captioned jointly administered Chapter 11 cases, the Ryan M. Leestma Domestic Asset Protection Trust (the "Trust") and Ryan M. Leestma ("Leestma"), individually and in his capacity as the

indispensable principal of the LMF, AP QOZB, Adelaide Pointe Boaters Services, LLC ("AP Boaters"), Adelaide Pointe Building 1, LLC ("AP Building"), and Waterland Battle Creek, LLC ("Waterland") (collectively the "Debtors") by the undersigned counsel, sue Defendant Independent Bank Corporation ("IBCP" or the "Bank"), seeking injunctive relief during the pendency of these chapter 11 cases, prohibiting the commencement, continuation, and collection activities against the non-debtor party Trust and non-debtor party Leestma through confirmation of a plan of reorganization and/or a temporary restraining order ("TRO") on as grounds therefore allege as follows:

## I.  NATURE OF THE ACTION

1.      This adversary proceeding seeks a single, narrow, and immediate preliminary injunction staying and enjoining IBCP's prosecution of its personal guaranty action against Mr. Leestma in *Independent Bank Corp. v. Leestma*, Case No. 25-20760-CBB, pending in the Kent County Circuit Court, State of Michigan, before the Honorable Curt A. Benson (the "State Court Action"), pending plan confirmation in these jointly administered Chapter 11 cases.

2.      Mr. Leestma is the sole manager, architect and indispensable key man of the Debtors and the Affiliated Non-Debtor Entities: (i) Adelaide Pointe Wet Marina, LLC, (ii) Harbor West QOZB, LLC, (iii) Adelaide Pointe Multi-Use, LLC, (iv) Muskegon Brewing Company, and (v) Adelaide Events (collectively the "ANDEs"). Mr. Leestma is the sole member, sole manager, and sole operating officer of each Debtor and ANDE entity, and the individual with the required and necessary regulatory, lender, customer, and operational relationships necessary for the purposes of the Debtors' reorganization. The Debtors, ANDEs and Mr. Leestma are, for all operational purposes, one and the same enterprise. There is no reorganization without him.

3.      IBCP's aggregate claim against the Debtors is approximately $27,500,000 on a face-amount basis. Approximately $9,800,000 of that debt is guaranteed by the United States Department of Agriculture under the Business and Industry Guaranteed Loan Program (the "USDA Guarantee"), reducing IBCP's net at-risk exposure to approximately $17,700,000.

4.      The Debtor and ANDE collateral securing the IBCP claim for the purposes of this Complaint suggest that the Debtor and ANDEs have an aggregate fair market value in the range of $55,000,000 to $60,000,000, producing a loan-to-value ratio of approximately 30% and an equity cushion in excess of 65%. In other words, IBCP is fully secured many times over and is federally backstopped against the residual.

5.      Notwithstanding that position, IBCP is prosecuting the State Court Action against Mr. Leestma on a guaranty despite IBCP and the Debtors agreeing in this Honorable Court to "stand down" by seeking entry of a personal judgment in the approximate amount of $28,000,000. At a status conference held, the Honorable Curt A. Benson stated on the record that he will not entertain further argument on IBCP's request for judgement and intends to rule. A judgment, if entered in the State Court Action, will produce no incremental recovery for IBCP that the Bank cannot already obtain from its collateral and the USDA Guarantee.

6.      IBCP's successful procurement of a judgement again Mr. Leestma and the assumed execution and control over Mr. Leestma's membership interests of both Debtors and ANDEs will, however, accomplish three results that could likely destroy the Debtors and affiliates reorganization: (a) it will consume Mr. Leestma's management time, financial capacity, and undivided attention during the precise weeks the Debtors require him most; (b) it will trigger cross-defaults across the Debtors' consortium of lenders, vendors, and customer obligations; and (c) it

will produce preclusive findings IBCP is positioning to import back into this Court for use in claim allowance and plan opposition.

7.      The evident harm is that a personal judgement against Mr. Leestma could give IBCP all of Mr. Leestma's membership interests and manager roles thereby allowing IBCP to initiate corporate resolutions to liquidate any and all entities Mr. Leestma has an interest or a manager role in.  Obviously, IBCP would rather seek to usurp this court's jurisdiction of authority by exercising state corporate governance.  This would cause an immediate loss of control with Debtors, ANDEs, and Non-Project Affiliated Entities (i) Bear Lake Tavern Restaurant (BLT Operations, LLC), (ii) Leestma Management Clay, LLC, (iii)Leestma Management Horizon, LLC, and (iv) Harbor West, LLC  (collectively the "NPAEs").  Effectively, IBCP would have the keys to the entire enterprise and exact any action that benefits them and them alone.

8.      Immediately upon *granting* these rights and interests every single secured creditor that has a "material change of control provision" in their loan documents would trigger defaults. This would trigger liquidation actions by all secured creditors.

9.      Alternatively, Mr. Leestma could file for personal bankruptcy.  However, this would achieve the same end once again as all secured creditors carry provisions that trigger defaults in the event that a guarantor declares bankruptcy.

10.     A personal guaranty judgment against Mr. Leestma is a judgment against the entire enterprise, Debtors and Non-Debtors alike.

11.     This Court has both the authority and the jurisdiction under § 105(a) to prevent that result. Plaintiffs respectfully request entry of a preliminary injunction staying the State Court

Action pending further orders of this court in order to allow the Debtors, ANDEs and NAPEs, with the assistance of the proposed CRO, to pursue plan confirmation and reorganization. Contemporaneously with this complaint the Debtors and Mr. Leestma have filed an Emergency Ex Parte Motion for Temporary Restraining Order seeking interim relief preserving the status quo until this Court can convene a proper hearing on the request to the Court on May 8, 2026 or at a time of this Honorable Court's convenience.  Alternatively, based on the notice provided through this compliant and accompanying motion the Debtors suggest that the Court  enter orders providing for the TRO with extension of the automatic stay without further hearing.

## II.  JURISDICTION AND VENUE

12.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in and relates to the jointly administered Chapter 11 cases pending before this Court and the established corporate domicile of LMF.

14.     This adversary proceeding is commenced pursuant to Federal Rule of Bankruptcy Procedure 7001(7).

15.     The Anti-Injunction Act, 28 U.S.C. § 2283 authorizes the relief sought under sections § 105(a) and § 362 of the Bankruptcy Code constitute the Acts of Congress within the meaning of the Anti-Injunction Act's statute of "expressly authorized" exception (11th Cir. 2012) ("11 U.S.C. § 105(a) empowers the bankruptcy courts to enjoin state suits.");

## III.  PARTIES

16.     Plaintiff Leestma Management, LLC is a Florida limited liability company and a debtor and debtor-in-possession in the above-captioned jointly administered chapter 11 cases.

17.     Plaintiff Adelaide Pointe QOZB LLC is a Michigan limited liability company and a debtor and debtor-in-possession in the above-captioned jointly administered chapter 11 cases.

18.     Plaintiff Ryan M. Leestma Domestic Asset Protection Trust is a Michigan Asset Protection Trust and non-debtor.

19.     Plaintiff Adelaide Pointe Boaters Services is a Michigan limited liability company and a debtor and debtor-in-possession in these jointly administered chapter 11 cases.

20.     Plaintiff Waterland Battle Creek, LLC is a Michigan limited liability company and a debtor and debtor-in-possession in these jointly administered chapter 11 cases.

21.     Plaintiff Ryan M. Leestma is a natural person, a resident of the State of Florida, the sole member, sole manager, and sole operating officer of each of the Debtors and the personal guarantor of the IBCP loan obligations underlying the State Court Action, and the defendant in the State Court Action.  Mr. Leestma's guarantee of IBCP's debt is in addition to the protections afforded by the USDA guarantees on IBCP's loans.

22.     Defendant Independent Bank Corporation is a Michigan-chartered commercial bank holding company. The Bank has appeared in the chapter 11 cases and asserts that the Debtors and Mr. Leestma have an aggregate face-amount claim of approximately $27,500,000.

## IV.  FACTUAL ALLEGATIONS

23.    Each of the three Debtor entities was conceived, capitalized, organized, and built by Mr. Leestma personally. Mr. Leestma is the sole member, sole manager, and sole operating officer of each.

### A. Mr. Leestma Is the Indispensable Key Man — One and the Same With the Debtors

24.    Mr. Leestma individually (a) owns between 78% and 100% of the equity of *every* entity and asset in the enterprise including all Debtors, ANDEs and NPAEs, including the Hall Street commercial property ("Hall Street") that is owned by LMF and is additional collateral for IBCP ; (b) holds all signature authority and operational decision-making authority for each Debtor; (c) has personally guaranteed every obligation of the Debtors, ANDEs and NPAEs, including the IBCP loans, the ChoiceOne Bank loan, the 4Front Credit Union loan, the Westshore Bank loan, and the Huntington Bank loans, as well as material vendor and customer commitments; (d) holds the institutional, regulatory, lender, equity-partner, vendor, and marina-customer relationships that constitute most if not all of the Debtors', ANDEs and NPAEs going-concern value; (e) is the only individual with the regulatory and project history required to administer the Adelaide Pointe Administrative Consent Order with the Michigan Department of Environment, Great Lakes, and Energy ("EGLE"); and (f) provides daily management of the Adelaide Pointe Project, two restaurants, an event center, a land company and four commercial investment properties.

25.    Mr. Leestma also personally guaranteed the Debtors and any ANDE obligations to EGLE.

26.    The Debtors, ANDEs and NPAEs have no other members, managers, executives, or operating officers. There is no successor management team.  Mr. Leestma accomplishes all of these functions with his "right hand" Aubrey Glick and his wife Dr. Leestma.

27.     Mr. Leestma has personally hired and hand-trained a management team that has a single general manager over each entity.  Issues related to those entities are escalated to Ms. Glick and Dr. Leestma.  If they are not solvable Mr. Leestma is called and directs action.

28.     The Declaration of Aubrey Glick, the Debtors' COO ("COO") confirms that without Mr. Leestma's full-time, undivided attention to the reorganization, the Debtors cannot will be severely handicapped across all entities. *See* Glick Declaration. If called to testify Ms. Glick would attest to her knowledge of the Receiver's mismanagement of the Project.  Ms. Glick will also attest that on April 30, 2026 the Receiver restricted access to the Debtors and/or ANDEs cash management system which resulted in the cutting off of all revenues to the Debtors and ANDEs.

29.     The identity of interests between Mr. Leestma and the Debtors is, accordingly, total. Litigation against Mr. Leestma is, in operational effect, litigation against the Debtors.

### B.  IBCP Is Federally Backstopped and Over-Secured — No Recovery Risk Exists

30.     Approximately $9,800,000 of that exposure is guaranteed by the United States Department of Agriculture under the Business and Industry Guaranteed Loan Program. The USDA Guarantee operates as a federally backed loss-sharing arrangement: upon default, the United States Department of Agriculture reimburses IBCP for the guaranteed portion of the loss. IBCP's net at-risk exposure is therefore approximately $17,700,000.

31.     The collateral securing IBCP's claim includes the Adelaide Pointe warehouses, boaters services building, vacant land, the Hall Street Property, the Waterland Battle Creek property and both of Mr. Leestma's residences.  The aggregate fair market value of that collateral is in the range of $55,000,000 to $60,000,000, as reflected in the Case Management Summary, and contemporaneous third-party appraisals.

32.     Plaintiffs allege that IBCPs implied exposure-to-value ratio is approximately 30%, and the equity cushion is in excess of 65%. If the USDA Guarantee is considered, IBCP is over-secured many times over.

33.     If IBCP is able to obtain and execute on a judgement on Mr. Leestma's personal guaranty, IBCP will have relief not only against its own collateral but will have control over *all* Debtor, ANDE and NPAE assets and entities via his manager roles.  If Mr. Leestma files for personal bankruptcy, loan defaults will trigger with every secured creditor, even obligations not in monetary default, which will again result in mass liquidation.

34.     Filing for personal bankruptcy will make it almost impossible for Mr. Leestma to achieve the DIP financing of which there has already been a DIP commitment.

35.     The Bank's current pursuit of a judgment against Mr. Leestma — a campaign that includes the State Court Action, an inflated $28 million homestead lien recording on his Florida Condo, an inflated $4 million Michigan-residence lien recording, the repossession of a personal RV— is irrational.

### C. The State Court Actions were Retaliatory to these Proceedings

36.     IBCP, in conjunction with their Receiver, filed a motion to expand the receivership from IBCP's collateral to ANDEs and property across campus regardless of the secured creditor.

37.     To prevent that abuse of the Project and the resulting devaluation and damage to the collateral of secured creditors the Debtors filed for relief under chapter 11 on April 1, 2026.

38.     On April 2, 2026, IBCP retaliated and made efforts to frustrate these proceedings by filing a Motion for Partial Summary Disposition in the State Court Action seeking entry of a

personal judgment against Mr. Leestma on his guaranty.  Leestma and the Defendants in the State Court Action filed an opposition to IBCP's request for judgement.

39.     On April 13, 2026, the day before the first hearing in this case and the same day the Receiver actually submitted his purportedly "final" monthly reports in the public record of this Court IBCP filed a reply brief in the State Court Action pressing for an immediate ruling. The Debtors' Michigan litigation counsel responded by seeking an administrative stay or closure of the State Court Action under Michigan Court Rule 2.421(E) pending resolution of these federal Chapter 11 proceedings.

40.     Michigan Judge Benson canceled the scheduled hearing and requested a status conference on April 28, 2026.  During that status conference Judge Benson declined to stay the State Court Action and stated on the record that he would not hear further argument and intended to rule. **A ruling against Mr. Leestma personally may issue at any time**.

41.     If a judgement is entered in Michigan against Mr. Leestma, the Debtors, ANDEs and Mr. Leestma have no remaining state-court remedy. The exclusive forum capable of preventing the imminent state-court ruling from frustrating the federal reorganization is this Court.

42.     Plaintiffs contemporaneously file an Emergency Motion for the TRO seeking interim relief preserving the status quo until this Court can consider the request for relief on or before the status conference scheduled for May 8, 2026.

43.     Entry of a judgment in the State Court Action will likely prevent Mr. Leestma, the Debtors and any ANDE from obtaining the DIP financing commitment given by 364 Capital.

44.     The distraction and diversion and any Defense of these actions will almost certainly take up 100% of Mr. Leestma's time trying to defend or appeal the judgment and divert his attempts to prevent total collapse.

45.     Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

46.     Injunctive relief is authorized under section § 105(a) to protect non-Debtor principals when necessary to safeguard the reorganization process.

## COUNT I

### (Injunction Under 11 U.S.C. § 105(a))

47.     Plaintiffs reallege and incorporate paragraphs 1 through 46 as if fully set forth herein.

48.     This is an action for injunctive relief pursuant to § 105(a) of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules against Defendant.

49.     The circumstances warranting the issuance of a § 105(a) injunction are present and include (a) total identity of interests; (b) derivative-only liability; (c) certain depletion of estate operational capacity; (d) necessity to reorganization; and (e) irreparable harm absent injunctive relief.

50.     Plaintiffs request the entry of preliminary injunction enjoining IBCP and its officers, directors, employees, agents, attorneys, and all persons acting in concert with it from prosecuting, advancing, or seeking entry of any order or judgment in the State Court Action against

Mr. Leestma personally, pending further proceedings and efforts to propose and confirm a chapter 11 plan of reorganization.

WHEREFORE, Plaintiffs, AP QOZB, LMF, AP Boaters, Waterland, the Trust and Mr.. Leestma respectfully request that this Court enter judgment in their favor and against Defendant IBCP as follows:

A.     Entering a preliminary injunction under 11 U.S.C. § 105(a) enjoining IBCP and its officers, directors, employees, agents, attorneys, and all persons in active concert or participation with it from prosecuting, advancing, seeking, or accepting entry of any order or judgment in *Independent Bank Corp. v. Leestma*, Case No. 25-20760-CBB, pending in the Kent County Circuit Court, State of Michigan, against Ryan M. Leestma personally and/or the Ryan M. Leestma Domestic Asset Protection Trust, pending plan confirmation in these jointly administered Chapter 11 cases;

B.     Directing Independent Bank Corporation to provide written notice of the entry of any order issued by this Court to the Kent County Circuit Court, with a copy to undersigned counsel, within twenty-four (24) hours of entry;

C.     Setting an evidentiary hearing the Court deems appropriate on the requested preliminary injunction at the Court's earliest available date, potentially in conjunction with the final evidentiary hearing scheduled for June 11, 2026.

E.     Granting such other and further relief as the Court deems appropriate along with appropriate pre-trial scheduling orders.

Respectfully submitted,

**JENNIS LAW**

/s/ David S. Jennis
**David S. Jennis, Esq.**
Florida Bar No. 775940
606 East Madison Street
Tampa, Florida 33602
Telephone: (813) 229-2800
Email: djennis@jennislaw.com
**Counsel for Plaintiffs**

**VERIFICATION**

The undersigned , Ryan M. Leestma, in his capacity as the manager of the Debtors, ANDEs and NPAEs hereby affirm and declare as follows:

I have reviewed the record in the Debtors' bankruptcy case and have knowledge of the facts and circumstances set forth in the Verified Complaint for Injunctive Relief (the "Complaint"); I have read the Complaint; the facts in the Complaint are true and correct to the best of my knowledge, information and belief; and I have freely and voluntarily executed the Complaint and I am authorized to execute this Complaint.

Pursuant to 28 U.S.C. Section 1746, I hereby declare under penalty of perjury, that the foregoing statements are true and correct on this 1st day of May, 2026.

Leestma Management, LLC
Adelaide Pointe QOZB, LLC
Adelaide Pointe Boaters Services, LLC
Waterland Battle Creek, LLC
Ryan M. Leestma Domestic Asset Protection Trust

_____
Ryan M. Leestma, individually and as manager